**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| **JAKE'S FIREWORKS INC.** | * |
| **1500 E. 27th Terrace** | |
| **Pittsburg, KS 66762** | * |
| | |
| **Plaintiff,** | * |
| | |
| **v.** | *       **Case No.** |
| | |
| **UNITED STATES CONSUMER PRODUCT** | * |
| **SAFETY COMMISSION** | |
| **4330 East-West Highway** | * |
| **Bethesda, MD 20814** | |
| | * |
| **and** | |
| | * |
| **ROBERT S. ADLER, in his official** | |
| **capacity as Acting Chairman of the** | * |
| **UNITED STATES** | |
| **CONSUMER PRODUCT SAFETY** | * |
| **COMMISSION** | |
| **4330 East-West Highway** | * |
| **Bethesda, MD 20814** | |
| | * |
| **Defendants.** | |
| | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      Jake's Fireworks Inc. ("Jake's"), plaintiff, by its undersigned counsel, files this Complaint for Injunctive and Declaratory Relief against the United States Consumer Product Safety Commission ("CPSC" or "Commission") and against Robert S. Adler in his official capacity as Acting Chairman of the Commission.

## INTRODUCTION

2.      For more than forty years, the federal agencies charged with regulating hazardous

consumer products have consistently and explicitly concluded that small reloadable aerial shells, a type of consumer firework device, are neither unreasonably dangerous nor banned by current regulations. That consistent conclusion is found in informal agency documents, public statements, and formal findings in the Federal Register, among other places.  The CPSC—the federal agency in charge of administering federal regulations on many hazardous products—acknowledged the lack of such a ban as recently as 2018 in a staff briefing document, when the Commissioners considered promulgating a new and objective hazardous substances ban on small reloadable aerial shells under 16 C.F.R § 1500.17(a)(3) (the "Audible Effects Regulation").

3. Contrary to the CPSC's longstanding conclusion that small reloadable aerial shells are *not* banned hazardous products under the Federal Hazardous Substances Act ("FHSA") and its implementing regulations, CPSC staff have nevertheless asserted that an existing ban *does* apply to such shells. Specifically, CPSC staff has asserted that some small reloadable aerial shells do violate 16 C.F.R. § 1500.17(a)(3), which applies to certain devices that are "intended to produce audible effects," and, therefore, *are* banned under that regulation.  The CPSC has repeatedly sent Jake's Letters of Action ("LOAs"), maintaining that reloadable aerial shells imported by Jake's were intended to produce audible effects.  To avoid the criminal and severe civil penalties that would result from failing to comply with these LOAs, Jake's has quarantined millions of dollars of product.

4. These LOAs never explain the CPSC's purported authority for applying the "audible effects" standard to Jake's products, especially given the CPSC's consistent historical statements in the rulemaking context that the small reloadable aerial shells were not banned. Moreover, the LOAs fail to document the results of the tests conducted to apply the "audible effects" standard to Jake's products.

5.      Furthermore, the "audible effects" test procedure, also known as the "ear test" or "poof/bang test," does not appear in the Code of Federal Regulations.  It apparently involves lighting the firework in an open air environment, under undisclosed conditions, and listening for whether the firework emits a sounds more like a "poof" versus a "bang."  If the investigator thinks she or he has heard a bang, then she or he deems the product to have been intended to create an "audible effect," and therefore to have satisfied an essential element for a violation of 16 C.F.R. § 1500.17(a)(3).  There are no objective measurements taken in conducting the "poof/bang test," so no results of such measurements are conveyed with the LOAs.

6.      Jake's, the plaintiff in this action, is one of the nation's largest importers and distributors of consumer fireworks (designated as 1.4G, UN 0336).  Small reloadable aerial shell fireworks are a vital part of Jake's wholesale and retail market.  Jake's has quarantined thousands of reloadable aerial shells, which it cannot sell without incurring the CPSC's draconian penalties outlined in the LOAs.

7.      Jake's seeks a declaratory judgment from this Court clarifying that the "audible effects" standard in 16 C.F.R. §1500.17(a)(3) does not apply to Jake's small reloadable aerial shell fireworks, or—in the alternative—that the agency's enforcement of the "audible effects" regulation is arbitrary and capricious and therefore unlawful.

8.      Jake's instituted an action in this Court seeking such declaratory relief.  *See Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n et al.*, Case No. 8:19-cv-011161-PWG (D. Md.), ECF 1.  However, on October 30, 2020, the Court (per the Honorable Paul W. Grimm) dismissed that action without prejudice for lack of subject matter jurisdiction, ruling that the amended complaint did not demonstrate that the CPSC had taken "final agency action" as required for judicial review under the Administrative Procedure Act ("APA").  *Jake's Fireworks*

*Inc. v. United States Consumer Prod. Safety Comm'n*, 498 F. Supp. 3d 792, 807 (D. Md. 2020).

Referring to the enforcement letter at issue (the "Notice") and the CPSC's Regulated Products

Handbook ("Handbook"), Judge Grimm held:

> In sum, based on my review of Jake's Fireworks allegations as well as the letters and Handbook, I conclude that the Notice was not the consummation of the Commission's decision-making process. While the process was nearing its end, there are still steps that Jake's Fireworks may take, such as request a hearing or reconsideration. Therefore, Jake's Fireworks has failed to satisfy the first prong of the *Bennett* [*v. Spear*, 520 U.S. 154 (1997)] test.

*Id.* at 806.

9.       As alleged below, in late 2020 and early 2021 Jake's heeded this Court's guidance

and exchanged correspondence with the Director of the CPSC's Office of Compliance and Field

Operations. Through this correspondence, Jake's took all steps available to it, including presenting

evidence and requesting an informal hearing and reconsideration by the agency, which requests

were denied. The Director's responses, combined with the agency's earlier notices and actions,

demonstrate that the CPSC has taken final agency action as required for judicial review under the

APA with respect to the agency's erroneous determinations that Jake's small reloadable aerial shell

fireworks are banned by the CPSC ban, and that the CPSC's "poof/bang" test (see Paragraph 5,

*supra*) is a valid method of determining whether Jake's products violate that ban.

10.       Alternatively, judicial review is available under the APA because the CPSC is

intentionally seeking to evade judicial review by claiming it has not taken steps that qualify as

final agency action, while effectively imposing a *de facto* administrative injunction prohibiting

Jake's from selling its lawful products.

**PARTIES**

11.       Plaintiff Jake's is a Kansas corporation, located in Pittsburg, Kansas. Jake's

exemplifies the American success story. The Marietta family sold fireworks in their backyard in

the 1940's.  Since then Jake's has grown from a local wholesaler and retailer into one of the nation's largest importers and distributors of consumer fireworks.  Jake's has distribution centers from coast to coast: South Carolina, Kentucky, Indiana, Missouri, Kansas, Texas, and Washington. From these distribution centers, Jake's distributes consumer fireworks into over 20 states.

12.     The Commission is an independent regulatory commission of the United States government, with its principal place of business in Bethesda, Maryland.  The Commission is charged with enforcing the Consumer Product Safety Act, 15 U.S.C. §§ 2051 to 2088 ("CPSA"), and the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §§ 1261 to 1278.

13.     Robert S. Adler is the Acting Chairman of the Commission, having been elected Acting Chairman effective October 1, 2019.  Acting Chairman Adler's office is at the CPSC headquarters in Bethesda, Maryland.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction under 28 U.S.C. § 1331 as the case arises under 5 U.S.C. §§ 701-706.

15.     Venue is proper under 28 U.S.C. § 1391(b), (e).

16.     This is a challenge to final agency action.  *See* Paragraphs 82 - 91, *infra*.

## BACKGROUND

17.     Fireworks are considered explosives and are classified by the Pipeline and Hazardous Material Safety Administration ("PHMSA") of the Department of Transportation ("DOT").  All explosives, from military devices down to consumer fireworks, must meet PHMSA standards and be approved before they can be transported within the United States.  *See* 49 C.F.R. § 173.56.

18.     Fireworks have two distinct explosive classifications based on explosive energy. The first fireworks classification is "Display" fireworks.  Display fireworks are classified as 1.3G

explosives.  Display fireworks are powerful and fall under specific DOT; Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); National Fire Protection Association; and CPSC regulations.  The second fireworks classification is Consumer fireworks, which are classified as 1.4G explosive devices having a minor explosion hazard.  *See* 49 C.F.R. § 173.50.  Prior to 1991, the DOT referred to 1.4G Consumer fireworks as "Class C" common fireworks.

19.     The reloadable aerial shell is one type of fireworks device.  Reloadable aerial shells must conform to American Pyrotechnics Association Standard 87-1, adopted by PHMSA as an industry standard. *See* 49 C.F.R. §§ 173.64; 173.65.  Reloadable aerial shells are classified as either 1.3G Display fireworks or 1.4G Consumer fireworks.  Shells in both classifications are shot from a separate mortar tube or launch tube.  Display 1.3G aerial shells, however, may be launched only by licensed operators because of their powerful explosive composition.  1.4G reloadable aerial shells are launched by consumers, often in backyards.

20.     Consumer 1.4G reloadable aerial shells are shot from the mortar tube 40 to 50 feet in the air.  At that point the burst charge component ignites, propelling visual effects across the sky.  It is the **sound** made by the burst charge component of the 1.4G consumer reloadable aerial shell that the CPSC uses to determine if the reloadable aerial shell is intended to create an "audible effect" under 16 C.F.R. § 1500.17(a)(3).

### Regulatory Background

**A.     16 C.F.R. § 1500.17(a)(3) Does Not Apply to Jakes' Small Reloadable Aerial Shell Fireworks.**

21.     The Audible Effects Regulation, 16 C.F.R. § 1500.17(a)(3), is one of the Banned Hazardous Substance provisions of the FHSA.

22.     While fireworks are typically thought of as celebratory displays, other types of explosives have a number of utilitarian uses.  For example, M-80s and cherry bombs are explosives

6

which create no visual display, but emit a loud sound (called a "report," much like the sound of a rifle). These explosives, called Explosive Pest Control Devices, are often used by farmers to scare birds and other pests away from their crops, among other uses. Explosive Pest Control Devices are governed by regulations promulgated by the ATF.

23.    To create their loud report, M-80s and similar devices include a large explosive charge which can—and, historically, did—lead to injury. The injury risk is exacerbated by the fact that these are handheld devices which may go off in close proximity to their user, exposing the person using them to a dangerous explosion at close range.

24.    Federal law provides for the regulation and ban of hazardous items through the FHSA. The statute imposes labeling requirements on any item that the operative agency finds, through notice-and-comment rulemaking, to be hazardous; alternatively, the agency may find, through notice-and-comment rulemaking, that the item cannot be rendered non-hazardous even by affixing a warning label. In such cases, the item may be banned from introduction into interstate commerce by regulation.

25.    The agency originally responsible for administering the FHSA was the Food and Drug Administration ("FDA"). In 1969, the FDA published a Notice of Proposed Rulemaking ("NPR") pursuant to the FHSA to ban consumer use of Explosive Pest Control Devices. 34 Fed. Reg. 260 (Jan. 8, 1969). That regulation was adopted in 1970, is now codified at 16 C.F.R. § 1500.17(a)(3), and bans "fireworks devices intended to produce audible effects (including, but not limited to) to cherry bombs, M-80 salutes, silver salutes, and other large firecrackers, aerial bombs, and other fireworks designed to produce audible effects . . . if the audible effect is produced by a charge of more than 2 grains [130 mg] of pyrotechnic composition."

26.    As the FHSA requires, the FDA, in promulgating the 1970 regulation, ensured the

regulation "impose[d] the least burdensome requirement which prevents or adequately reduces the risk of injury for which the regulation is being promulgated." 15 U.S.C. § 1262(i)(2)(C). Specifically, in the preamble to the final rule, the FDA noted that the risk it was concerned with was that "[p]roducts ostensibly intended for agricultural use have been diverted and sold to the general public (including children)," causing severe injuries.  In explaining its decision to ban only these agriculture-related fireworks, the FDA stated:

> ***The intention is not to ban so-called "Class C" common fireworks***, but only those designed to produce audible effects by a charge of over 2 grains of pyrotechnic composition.  (Propelling and expelling charges consisting of a mixture of sulfur, charcoal and saltpeter are not considered as designed to produce an audible effect.)  The Commissioner's primary concern in this matter is to close the loophole through which dangerously explosive fireworks, such as cherry bombs, M-80 salutes, and similar items, reach the general public.

35 Fed. Reg. 7415 (May 13, 1970) (emphasis added).

27.     Thus, the agency that had the regulatory authority at the time specifically justified this regulation with reference to devices *other than* "Class C common fireworks," and expressly disclaimed any intent to ban Class C devices.  Indeed, the agency was legally required to restrict the regulation this way, since Class C common fireworks had nothing to do with the diversion of "[p]roducts ostensibly intended for agricultural use" that justified the regulation in the first place; therefore, any restriction that also encompassed Class C common fireworks would not have been the least burdensome way of achieving the agency's goals.

28.     This limitation is significant because the CPSC has applied that regulation to seize Jake's 1.4G consumer reloadable aerial shells, which under the pre-1991 classification system (*see* Paragraph 18, *supra*) would be *Class C* fireworks and, therefore, exempt from the regulation at 16 C.F.R. §1500.17(a)(3).

29.     Notably, neither the notice of proposed rulemaking nor the 1970 final rule identified

any risk to consumers from the *audible effect* of banned devices; rather, the fact that the device was "intended to produce audible effects" was a "proxy" for its similarity to the highly explosive agricultural devices that concerned the FDA. Fireworks Final Rule Briefing Package at ("2018 Briefing Package") at 79 (Sept. 26, 2018), *available at* https://www.cpsc.gov/s3fs-public/Final%20Rule%20-%20Amendments%20to%20Fireworks%20Regulations%20-%20September%2026%202018%20%281%29.pdf?yr30bGVazalQcEbznbPy46T81o1iuIFr

("Because CPSC does not have information indicating that injuries are related to particular volumes of fireworks sound, [staff] did not consider adopting a requirement to limit the volume of fireworks sounds. As noted elsewhere, the phrase 'intended to product [sic] audible effects' was intended as a proxy for high explosive power, not to limit some harmful level of sound."). The CPSC noted this also in 2017, when in a Notice of Proposed Rulemaking, it stated that "the reference to 'audible' effects" in 16 C.F.R. § 1500.17(a)(3) "was a method of identifying" the fireworks within the scope of the regulation "through the sound the devices make and not an indication of any safety purpose relating to the loudness of the devices or hearing injuries." 82 Fed. Reg. 9012, 9014 (Feb. 2, 2017) (the "2017 NPR"). In the 2017 NPR, the CPSC proposed to eliminate the reference to intent to produce an audible effect in 16 C.F.R. § 1500.17(a)(3) altogether. *Id.* at 9016.

30.     In 1973, the newly created CPSC took over responsibility for the FHSA from the FDA. 15 U.S.C. § 2079. When the CPSC assumed responsibility for this statute, it adopted the existing FDA regulations without change, transferring the regulations from 21 C.F.R. Part 191 to 16 C.F.R. Part 1500. 38 Fed. Reg. 27012 (September 27, 1973).

31.     In 1990, the CPSC examined the regulation of reloadable shell devices. It published an Advanced Notice of Proposed Rulemaking ("ANPR") in the Federal Register entitled

"Reloadable Tube Aerial Shell Fireworks Devices."  55 Fed. Reg. 31069 (July 31, 1990).  The

ANPR described the products at issue in the proposed regulation as follows:

> Reloadable tube aerial shell fireworks devices . . . are Department of
> Transportation ("DOT") Class C common fireworks devices.  Typically,
> these devices consist of a cardboard tube approximately 11 inches tall and
> separate shells that are placed inside of the tube.  Four nominal sizes of
> shells are available for consumer use: 1.5, 1.75, 2 and 2.25 inches in
> diameter.  Although soliciting information concern[ing] all sizes of
> reloadable shells, the ANPR considers additional regulation of **only** those
> reloadable tube aerial shells fireworks devices with shells greater than 1.75
> inches in diameter or smaller shells with explosive power that exceeds that
> of a shell 1.75 inches in diameter.

*Id.* at 31069 (emphasis added).

32.    The CPSC's ANPR further stated:

> ***Under the Commission's existing regulations, reloadable tube aerial***
> ***shells are not banned hazardous substances.***  The Commission staff has
> information indicating that devices with shells greater than 1.75 inches may
> pose an unreasonable risk of injury.  Devices like the reloadable shell
> devices were not widely distributed when the Commission developed its
> current fireworks regulations.  ***Thus, the existing regulations do not***
> ***specifically address hazards posed by these devices.***  No other changes to
> the existing fireworks regulations are within the scope of this ANPR.

*Id.* (emphasis added).

33.    By acknowledging that consumer reloadable aerial shells "are not banned

hazardous substances," the CPSC conceded in 1990 that none of its existing regulations—

including the 1970 "audible effect" regulation—applied to reloadable tube aerial shells of any size.

When it proposed regulating reloadable shell fireworks, the CPSC further stated that it had

information supporting a ban of *large* reloadable shell (*e.g.*, shells whose outer diameter exceeded

1.75 inches), but the CPSC pointed to *no* evidence that smaller reloadable shells needed to be

regulated.

34.    In February 1991, the CPSC continued the rulemaking process with a Notice of

Proposed Rulemaking ("NPR"), in which it explained its proposed ban of large reloadable shells. In this NPR, the CPSC stated:

> Other products exist which retailers and consumers could substitute for reloadable devices using shells larger than 1.75 inches if the proposed ban became effective. ***In addition to reloadable shell devices using shells 1.75 inches and smaller***, there are non-reloadable aerial devices.

56 Fed. Reg. 6321, 6323 (February 15, 1991) (emphasis added). The CPSC thus affirmed the continued legality and availability of small reloadable aerial shells.

35. At the conclusion of its notice-and-comment process, the CPSC finalized a regulation that, consistent with the NPR, banned "[r]eloadable tube aerial shell fireworks devices that use shells larger than 1.75 inches in outer diameter."  56 Fed. Reg. 37831 (Aug. 9, 1991) (promulgating 16 C.F.R. § 1500.17(a)(11)(i)).  In finalizing the regulation, the CPSC noted that issuing the regulation required that it "make certain findings and … include these findings in the regulation." *Id.* § 1500.17(a)(11)(ii)(A).  One such finding was that ***the agency had considered— and rejected—the alternative of "inclusion of some reloadable shells 1.75 inches or smaller in the ban.*** *Id.* § 1500.17(a)(11)(ii)(D) (emphasis added).

36. In promulgating the Final Rule, the CPSC contemplated whether to ban "reloadable shells that are 1.75 inches or less in outer diameter and have the 'equivalent explosive power' of larger shells." *Id.* § 1500.17(a)(11)(ii)(D)(3).  But the agency concluded that a safety rationale for such a ban, even if tied to the kinetic energy level of the exploded firework, "could not be established." *Id.*  Thus, ***the agency concluded that a ban on any small reloadable aerial shell fireworks simply was not justified under the statutory scheme***, and that a ban on large shells would "virtually eliminate" the injuries that it was concerned with. *Id.* § 1500.17(a)(11)(ii)(C).

37. In 2017, the CPSC again contemplated its regulations regarding reloadable aerial shells and proposed a rule banning certain small reloadable aerial shells based on the presence of

certain metals in the burst charge.  (82 Fed. Reg. 9012 (February 2, 2017)) (the "2017 NPR"). CPSC staff then prepared a briefing package for the CPSC commissioners, summarizing the comments received in response to the 2017 NPR and proposing that the rule be finalized, in relevant part, consistent with the 2017 NPR.  *See* 2018 Briefing Package at 1.

38.     The 2018 staff Briefing Package noted that "no [current] CPSC regulation limits the quantity of explosive composition" for small reloadable aerial shells where the sound they produce is "incidental to the dispersion of visual effects," as "the limit in § 1500.17(a)(3) does not apply" in that circumstance. *Id.* at 14.  Although the agency's staff could not "calculate a statistical relationship between explosive power and injuries," staff nonetheless asserted, albeit without evidentiary basis, that "[l]imiting the amount of explosive power of these types of fireworks devices will reduce the severity of health effects."  *Id.* at p. 13.  This statement is contradicted by the Commission's finding in the 1991 Final Rule that there was no safety rationale to ban the smaller reloadable aerial shells on grounds tied to kinetic energy.

39.     On October 3, 2018, the presidentially-appointed CPSC commissioners considered, but did not adopt, the staff's proposed rule, with several commissioners observing instead that staff had not presented sufficient evidence to overrule the 1991 and 1970 determinations that small reloadable aerial shells could not be banned.  The commissioners asked staff to reevaluate the proposed final rule; on information and belief, that reevaluation remains pending.  In other words, the CPSC acknowledged less than three years ago that there was no ban of small reloadable aerial shells in its regulations, and that creating such a ban would require notice-and-comment rulemaking, but that the CPSC has not at this time found a factual basis to promulgate such a ban.

40.     Thus, the CPSC's own historic publications and statements consistently show that 16 C.F.R. § 1500.17(a)(3) does not apply to reloadable aerial shells of 1.75 inches or less in diameter.

41.     Notwithstanding the clear and consistent conclusion that 16 C.F.R. § 1500.17(a)(3) does not apply to reloadable aerial shells of 1.75 inches or less in diameter, the CPSC's enforcement staff began in the 1990s applying the "intent to create audible effects" regulation to small reloadable aerial shells, banning the importation or sale of many such shells. The CPSC took these actions despite the FDA Commissioner's 1970 statement excluding consumer fireworks from this regulation and the absence of any subsequent regulatory decision-making to extend the regulation to small reloadable aerial shells.  Before these enforcement actions, the CPSC conducted no further notice and comment rulemaking and made no announcement explaining why this enforcement activity began, or how it is consistent with the regulation and its regulatory history.

**B.     The CPSC Uses an Unreasonable, Subjective, Arbitrary and Capricious Test to Determine Whether a Fireworks Device is Intended to Produce An Audible Effect.**

42.     The CPSC uses a two-part test to determine whether small reloadable aerial shells are banned hazardous substances under 16 C.F.R. § 1500.17(a)(3).  The first part of the test determines whether a fireworks device is "intended to produce an audible effect."  If that part of the test is positive, then, in the second part of the test, measurements are made to determine if the audible effect was produced by more than 2 grains of pyrotechnic composition.  The first part of the test – used to determine whether a fireworks device is "intended to produce an audible effect" – is unscientific, subjective, and arbitrary and capricious.  Moreover, this two-step methodology has never been the subject of notice and comment rulemaking or any official publication.

43.     *United States v. Shelton Wholesale, Inc.*, 34 F. Supp. 2d 1147 (W.D. Mo. 1999), *aff'd on other grounds*, 277 F.3d 998 (8th Cir. 2002), *cert. denied*, 537 U.S. 1000 (2002), provided

the first public statements that the CPSC employs the two-test methodology in enforcing 16 C.F.R. §1500.17(a)(3).  The *Shelton* defendants contended that small reloadable aerial shell devices could have been intended to create *either* auditory or visual effects – not both.  *Id.* at 1158. But they did not challenge the scope of 16 C.F.R. §1500.17(a)(3) nor the CPSC's testing methodology.

44.     During the *Shelton* case, the CPSC Laboratory chief, Warren Porter, provided the first public explanation of the two-step methodology under 16 C.F.R. §1500.17(a)(3).  As the district court summarized, Porter testified at trial that "the CPSC determines whether a device is intended to produce an audible effect by firing the device and determining whether it goes 'pop' or 'poof' when the visual effect (generally stars) is seen or 'boom' or 'bang' when the visual effect occurs."  *Id.*  The CPSC only measures the material composition if the technician hears a "boom" or "bang."  *Id.*

45.     The "poof/bang" standard is sometimes referred to as the "ear" test because the instrumentality used to make the threshold determination is a human ear.  On information and belief, the CPSC has not altered this two-part test methodology since *Shelton*, and the "poof/bang" test remains the CPSC's method for applying 16 C.F.R. §1500.17(a)(3).  *See* 2018 Briefing Package at 12 ("To determine 'intent to produce an audible effect,' CPSC staff listens to the device during field testing and based on the sound, determines whether the applicable 'loud report' was detected.  If staff hears a 'loud report,' staff considers the fireworks device 'intended to produce an audible effect,' in which case, the burst charge (which causes the audible effect) is limited to 2 grains (130 mg).") (citing testing manual); *id.* at 96 ("To enforce the current requirements, CPSC staff uses what is often referred to as the 'amount' test or 'ear' test. . . . The 'amount' test involves a technician listening to the device during field testing and determining whether or not the sound heard was intentional or a byproduct of the functioning of the device.  If staff determines that the

sound is intentional, the device is considered to be 'intended to produce an audible effect.'").

46.     The "poof/bang" or "ear" test appears nowhere in the text of the regulation itself, and appears to have been invented by CPSC staff as a proxy for whether a device was "intended to produce an audible effect."  If a device "failed" the "poof/bang" test by emitting what staff considers a "bang," the agency would consider the device to have been "intended to produce an audible effect," and would then measure the pyrotechnic material contained therein to determine whether the "bang" was caused, in violation of the regulation, by "a charge of more than 2 grains of pyrotechnic composition."  16 C.F.R. § 1500.17(a)(3).  Although a "poof" is also a kind of audible effect, CPSC staff have decided that devices making what they consider a "poof" sound are not "intended to produce an audible effect," and therefore not subject to the 2 grain limit.  Upon information and belief, the "poof/bang" test was not challenged as arbitrary in *Shelton*. So, not surprisingly, the court in *Shelton* did not address that issue.

47.     The "poof/bang" or "ear" test is an unscientific methodology for determining an "intent to produce an audible effect," and is subjective, arbitrary, and capricious.  The CPSC's Consumer Fireworks Testing Manual ("CPSC Testing Manual") shows that CPSC staff do not engage in even minimally acceptable laboratory practices when applying the "poof/bang" standard, exacerbating its unreasonableness and illegality.  CPSC Testing Manual at 1 (available at https://www.cpsc.gov/PageFiles/121068/testfireworks.pdf).  The CPSC Testing Manual specifically references the Audible Effects Regulation in its "Background" section.  *Id.* at 2.

48.     Scientific testing methodology mandates that the testing be conducted using a reliable and reproducible procedure.  The ear test is neither reliable nor reproducible.  There is no scientific equipment or controlled environment used in the ear test; you have a human ear listening to a fireworks device in the open, subject to countless variables that impact sound waves, which

are impossible to reproduce for the next test.

49.     The CPSC Testing Manual contains no guidelines to account for variables that may account for differences in how the sound produced by a shell exploding 40 feet in the air is perceived by a human ear, including factors such as ambient noise, wind, temperature, atmospheric pressure, humidity, ground surface type, and bystanders, all of which can affect sound waves.  The CPSC staff acknowledged as much in 2018: "Because the 'ear test' is influenced by environmental factors and design variations in devices, it does not produce consistent results, and one could argue that one would have to test a large number of samples to ensure that a 'loud report' could not be detected by other technicians testing the product under possibly somewhat different environmental conditions or variations inherent in handmade products."  2018 Briefing Package at 141. The agency does not record, much less account for, *any* such environmental or other testing conditions.

50.     The CPSC Testing Manual requires CPSC staff to document the results of their tests using forms in the CPSC Testing Manual.  *See* CPSC Testing Manual at 9-16 (requiring that field test results be recorded in various sections of the "Fireworks Field Sheet," and noting this sheet "can be found in Appendix 1, which contains the various Fireworks Testing Data Forms"). But none of the CPSC Testing Manual forms contains a space for recording whether the "poof/bang" test was performed, the conditions under which it was performed, or the result of the test. *Id.* at App'x 1.

51.     The CPSC has repeatedly acknowledged that its test for determining the intent to create an audible effect is subjective.  *CPSC FY 2013 Fireworks Report* at 1 ("Aerial fireworks devices intended to produce an audible effect are limited to 130 mg (2 grains) of pyrotechnic composition according to 16 C.F.R. § 1500.17(a)(3).  Because the regulation only limits the amount of pyrotechnic composition for devices intended to produce an audible effect, compliance

determinations can be made only after a *subjective* determination of intent to produce an audible effect.") (emphasis added); *id.* at 5 ("The current test method for determining whether an aerial fireworks device produces an audible 'report' that is subject to the limit of 130 mg of pyrotechnic composition is *subjective*. The test method relies on listening to the functioning device for qualitative similarities to such illegal devices as M-80s and 'Cherry Bombs' to make an assessment." (emphasis added)); *CPSC FY 2012 Fireworks Report* at 1 ("Staff conducted testing to evaluate two different ways of potentially eliminating the currently *subjective* method of determining intent to produce an audible effect." (emphasis added)); *id.* at 4 ("The current test method for determining whether an aerial fireworks device produces an audible 'report' that is subject to the limit of 130 mg of pyrotechnic composition is *subjective* and relies on listening to the functioning device to make an assessment." (emphasis added)).

52.     Compliance determinations can be made only after the initial *subjective* determination of intent to produce an audible effect. The ear test's subjectivity, however, precludes any ability of fireworks manufacturers or distributors to reliably use it. The CPSC cannot reference any objective parameters used in its own internal testing. *See* 2018 Briefing Package at 12 (noting that "staff does not listen for sound level produced by a device"). Thus, manufacturers and distributors have no way of ensuring that their products comply with the agency's subjective, evaluator-dependent standard.

53.     The CPSC has also repeatedly acknowledged that its "poof/bang" test does not ensure that the only fireworks that are banned are those which are unsafe—or that all unsafe fireworks are banned. *See, e.g.*, CPSC, *Fireworks Safety Standards Development Project FY 2013 Status Report* at 10 (Oct. 2013) (available at http://www.cpsc.gov//Global/Research-and-Statistics/Injury-Statistics/Fuel-Lighters-and-Fireworks/FY2013FireworksStatusReport.pdf) (in

CPSC testing "there was no relationship between our determination of intent to produce an audible effect [by means of the "poof/bang" test] and the potential risk of injury due to pressure wave. This does not mean that the requirement limiting the size of devices intended to produce an audible effect is an ineffective safety measure.  Staff believes that the requirement forces manufacturers of fireworks to limit the explosive power of large shells to prevent the devices from producing a sound which *could* be considered under the regulation to show that the device was 'intended to produce audible effects.'  However, the results in this report seem to indicate that, given modern fireworks production, intent to produce an audible effect may not be the best means of controlling fireworks explosive power risks") (emphasis added); *id.* at 19 (similar).

54.     The CPSC has considered addressing the acknowledged problems with the ear test, but has not adopted any changes to its protocols to date.  Thus, on September 6, 2016, the Commission approved and requested comments on a proposed policy statement rule on its method of determining whether a device was subject to 16 C.F.R. § 1500.17(a)(3) (81 Fed. Reg. 61146 (Sept. 6, 2016)).  In that proposal, the Commission stated that "*[t]he Commission's rules do not further define or describe 'devices intended to product audible effects,' nor do they define how the Commission will determine whether a product falls under this category*."  *Id*. at 61146 (emphasis added).  The proposed policy statement has not been adopted by the CPSC.

55.     On February 2, 2017, the CPSC issued the 2017 NPR, seeking to amend CPSC's regulations regarding fireworks, including the Audible Effects Regulation.  Acknowledging the current lack of a ban for small reloadable aerial shell devices, the 2017 NPR included a proposal to abandon the "poof/bang" (ear) test, and adopt a ban on devices with metallic fuel greater than 100 mesh in particle size in the break charge.  The 2017 NPR states:

> Significant training and experience are necessary to distinguish between sounds that are an intentional effect of a fireworks device and sounds that are merely a

byproduct of other effects or functions of a fireworks device.  CPSC staff has substantial training and experience to make this distinction, but the Commission believes that a simpler and ***more quantitative test would be preferable and would facilitate consistent and accurate industry testing***.

82 Fed Reg. 9012, 9015 (Feb. 2, 2017) (emphasis added).

56.     Despite this implicit recognition that the current regulatory framework does not "facilitate consistent and accurate industry testing," no final action was taken by the Commissioners, and the CPSC continues its "poof/bang" testing methodology in enforcing 16 C.F.R. §1500.17(a)(3).

## FACTUAL BACKGROUND

### A.     The CPSC's Actions Concerning Jake's Reloadable Aerial Shells

57.     Jake's commercially distributes many consumer fireworks, including those commonly known as small reloadable aerial shells ("Reloadable Aerial Shells").[1]  Its top-of-the-line Reloadable Aerial Shell is the Excalibur product line, a best seller.

58.     Jake's does not manufacture the Reloadable Aerial Shells it sells; instead, it purchases and imports them from a Chinese manufacturer.

59.     Importing the Reloadable Aerial Shells requires that Jake's certify, among other things, that the fireworks comply "with all rules, bans, standards, or regulations applicable to the product under [the Consumer Product Safety Act]."  15 U.S.C. § 2063(a)(1)(A).  The certification may be premised on "a test of each product or upon a reasonable testing program."  *Id.*

60.     Beginning in approximately 2010, at the request of the CPSC, Jake's has used American Fireworks Standards Laboratory ("AFSL"), an independent non-profit third-party testing laboratory, to test its fireworks for compliance with CPSC regulations.  Representatives of

---

[1] Reloadable Aerial Shells are sometimes referred to by the CPSC as reloadable tube aerial shell devices.

the CPSC sit on the standards committee of AFSL.

61.     Every Reloadable Aerial Shell imported by Jake's is subject to the AFSL certification program that the CPSC requested Jake's follow, and every Reloadable Aerial Shell imported by Jake's has the certification required by statute.

62.     At the United States port of entry, the CPSC inspects and samples products, including Reloadable Aerial Shells, that are being imported into the United States and tests those samples for compliance with its requirements.  The CPSC issues to the importer of record a "CPSC Notice of Sampling and Conditional Release."  The products are released to the importer of record under bond, and the CPSC Notice of Sampling and Conditional Release demands that the importer of record not distribute in commerce the shipment of product subject to the sampling until the earlier of a determination of admissibility or 60 days.  A copy of an exemplar CPSC Notice of Sampling and Conditional Release is attached hereto as Exhibit A.  Upon completion of the sampling, the CPSC advises the importer of record of the results of its testing for admissibility.  If the CPSC determines that the product is admissible, it advises that the product can be released from bond and distributed in commerce.

63.     As stated in the CPSC's Regulated Products Handbook ("Handbook") (attached hereto as Exhibit B): "When CPSC staff determines that a product violates a specific statute or regulation, CPSC Office of Compliance and Field Operations generally notifies the responsible firm . . . of the violation and requests a specific remediation of the problem."  Handbook at 5.  "Notification to the responsible party is usually in the form of an official letter," which is referred to as a "Letter of Advice" ("LOA") or "Notice of Noncompliance."  *Id.*  These letters identify the alleged non-compliance and provide the recipient with an opportunity for an informal hearing described in Chapter 3 of the Handbook (which is conducted by staff under delegated authority

and generally consists of exchanges of correspondence).  *Id.* at 18-19.

64.     The CPSC has periodically sent such Letters of Advice or Notices of Noncompliance to Jake's regarding its Reloadable Aerial Shells since late 2006.  However, beginning in the spring of 2014, the CPSC sampled Reloadable Aerial Shells imported by Jake's at an unprecedented rate.  During the period from March 19, 2014 through July 20, 2018, the CPSC collected samples of Reloadable Aerial Shells, and detained, at least temporarily, Reloadable Aerial Shells with an approximate market value exceeding $3.7 million.  The CPSC continues to sample and detain Jake's Reloadable Aerial Shells through the filing date of this Complaint.  Based on its past pattern and practice of conduct, and on information and belief, the CPSC will not only continue to sample and detain Jake's Reloadable Aerial Shells in the future, but will increase its rate of sampling and detention.

65.     Of those Reloadable Aerial Shells sampled, the CPSC issued Notices of Noncompliance for approximately 33% of the sample Reloadable Aerial Shells (the "Detained Reloadable Aerial Shells"), despite the fact that the sampled Reloadable Aerial Shells have the same or similar design and operate in the same or similar manner; they all disperse visual effects about 40 feet in the air.  The Notices of Noncompliance issued for the Detained Reloadable Aerial Shells effectively demanded that the shipment of Detained Reloadable Aerial Shells subject to the sampling be destroyed and threatened civil penalties up to $15,000,000 and criminal penalties if the Detained Reloadable Aerial Shells are introduced into commerce.  A copy of an exemplar Notice of Noncompliance dated September 18, 2018, including the attached laboratory reports, is attached hereto as Exhibit C, and contains language similar to the other Notices of Noncompliance received by Jake's concerning the Detained Reloadable Aerial Shells.

66.     The Notices of Noncompliance allege that the Detained Reloadable Aerial Shells

violate the Audible Effects Regulation because they are "intended to produce audible effects" and the "audible effect is produced by a charge of more than 2 grains of pyrotechnic composition."

67.     Some of the Notices of Noncompliance also allege that the Detained Reloadable Aerial Shells at issue in those particular notices violate a purported "Reports Labeling Requirement," meaning a requirement that the warning label for the fireworks include a statement that the product emits "reports" when used.  No such specific requirement exists in the Code of Federal Regulations and none is cited in these Notices.  Instead, the Notices cite the general fireworks labeling regulation, 16 C.F.R. § 1500.14(b)(7)(xv) (the "Labeling Regulation").  That provision requires that the Reloadable Aerial Shells have a label "indicating to the user where and how the item is to be used and necessary safety precautions to be observed."  But as noted above, the CPSC has never established that a "report" is itself a hazard requiring safety precautions; thus, there can be no requirement that the Reloadable Aerial Shells warn consumers of this purported hazard.  Moreover, the CPSC's determination that the Reloadable Aerial Shells emit reports is based, upon information and belief, on the same "poof/bang" test as is the determination that the Reloadable Aerial Shells violate the Audible Effects Regulation.  For the same reasons that test is unreasonable, unlawful, arbitrary and capricious as a basis for finding a violation of the Audible Effects Regulation, it cannot be used to find a violation of the Labeling Regulation.

68.     Some of the Notices of Noncompliance for the Detained Reloadable Aerial Shells came with a "Laboratory Report" purportedly containing the results of the tests under which the CPSC made its determination that the small reloadable aerial shells violated CPSC regulations.  A copy of an exemplar "Laboratory Report" is attached hereto as Exhibit D (the exemplar "Laboratory Report" attached hereto as Exhibit D is also part of Exhibit C).  Other Notices of Noncompliance for the Detained Reloadable Aerial Shells came with a "Laboratory/Compliance

Summary" which contains less information than a Laboratory Report.  A copy of an exemplar Notice of Noncompliance with an accompanying "Laboratory/Compliance Summary" is attached hereto as Exhibit E.  Neither the Laboratory Reports nor the Laboratory/Compliance Summaries accompanying the Notices of Noncompliance for the Detained Reloadable Aerial Shells recorded the results of the "poof/bang" test, or any other test, by which the CPSC determined that the Detained Reloadable Aerial Shells were intended to produce audible effects and violate the Audible Effects Regulation or the purported Report Labeling Requirement.  In fact, neither the Laboratory Reports nor the Laboratory/Compliance Summaries accompanying the Notices of Noncompliance for the Detained Reloadable Aerial Shells record whether the "poof/bang" test even took place, or where it took place, or by whom it was conducted.  None of the Detained Reloadable Aerial Shells were intended to produce audible effects or contain reports.

69.     Notwithstanding that the remainder of the sampled Reloadable Aerial Shells have the same or similar design and operate in the same or similar manner as the Detained Reloadable Aerial Shells—and were purportedly subject to the same "poof/bang" test as the Detained Reloadable Aerial Shells—the CPSC determined that the remainder of the sampled Reloadable Aerial Shells were compliant, and authorized Jake's to distribute them in commerce.

70.     Jake's filed responses to the Notices of Noncompliance for the Detained Reloadable Aerial Shells in which Jake's contested the applicability of the Audible Effects Regulation and the purported Reports Labeling Requirement and identified for CPSC staff the deficiencies in its testing methodology for determining whether a Reloadable Aerial Shell is "intended to produce audible effects," requesting that the CPSC rescind the Notices and release the Detained Reloadable Aerial Shells without condition for introduction into commerce.  A copy of an exemplar response by Jake's to the Notices is attached hereto as Exhibit F.

71.     When the CPSC failed to respond to Jake's responses to the Notices, Jake's renewed its request that the CPSC rescind the Notices and that the Detained Reloadable Aerial Shells be released without condition for introduction into commerce.

72.     By letter dated October 3, 2014, the CPSC reiterated its position that the Detained Reloadable Aerial Shells violated the Audible Effects Regulation and the Reports Label Requirement and repeated its "request" (effectively a demand) that the Detained Reloadable Aerial Shells be destroyed.  A copy of CPSC's letter dated October 3, 2014 is attached hereto as Exhibit G.  By letter dated October 14, 2014, Jake's filed a further response to the CPSC's position.  A copy of Jake's October 14, 2014 letter is attached hereto as Exhibit H.

73.     In response to Jake's inquiries about whether the CPSC's October 3, 2014 letter constituted final agency action regarding the Detained Reloadable Aerial Shells, on or about December 8, 2014, CPSC staff orally indicated to Jake's that the CPSC intended to retest samples of the Detained Reloadable Aerial Shells.  On information and belief, the retesting occurred prior to February 13, 2015.

74.     On May 20, 2015, the CPSC issued another Notice of Noncompliance for the Detained Reloadable Aerial Shells (attached as Exhibit I).  This Notice came with laboratory reports purportedly containing the results of the retests.  In this Notice, the CPSC determined that samples of two shipments originally determined by the CPSC to be intended to create an audible effect, and therefore not compliant with regulations, were, upon retest, ***not*** intended to create an audible effect, and therefore complied with regulations.  Thus, although samples from these two shipments were originally determined to have failed the "poof/bang" test, upon retest they were determined to have passed the "poof/bang" test.  The CPSC released those two shipments for introduction into commerce.

75.     The May 20, 2015 Notice notified Jake's that the other shipments of Detained

Reloadable Aerial Shells violated 16 C.F.R. §§ 1500.17(a)(3) or 1500.14(b)(7)(xv) (the Audible

Effects Regulation and the Reports Label Requirement).  Like the prior Notices, the May 20, 2015

Notice effectively demanded that Jake's destroy the remaining Detained Reloadable Aerial Shells.

It also advised Jake's that sale or distribution in commerce of the referenced products was

prohibited by section 4 of the Federal Hazardous Substances Act, 15 U.S.C. § 1264, and section

19 of the Consumer Product Safety Act, 15 U.S.C. § 2069.

76.     After retesting certain samples and confirming its prior results, the CPSC issued

another Notice of Noncompliance on March 7, 2016 (attached as Exhibit J).  Like the prior Notices,

the March 7, 2016 Notice effectively demanded that Jake's destroy the remaining Detained

Reloadable Aerial Shells.  It also advised Jake's that sale or distribution in commerce of the

referenced products could subject Jake's and its officers to criminal and civil penalties under 15

U.S.C. §§ 1264 and 2069..

77.     Jake's attempted to avail itself fully of the informal appeal process set forth in

Chapter 3 of the CPSC's Handbook, which states: "This Chapter contains the procedures to be

followed if a firm disagrees with Commission staff's determination that a product is in violation

of a statute, rule, regulation, standard, or ban administered by the CPSC."  Handbook, Exhibit B

at 18.  The Handbook advises a firm that disputes the agency's finding of violation that it "may

submit, to the indicated [staff] recipient, all evidence and arguments that support why you believe

the product is not violative; [or] not subject to a specific statute, rule, regulation, standard, or ban."

*Id.*  "A firm may respond to a notice of noncompliance orally or in writing, and the firm may

request an informal hearing to meet personally with Office of Compliance or Import Surveillance

Division staff to present orally views and evidence."  *Id.*  Among the items a firm may submit are

"any other relevant data to support the claim of compliance." *Id.* Jake's followed all of these steps. Jake's sent written responses to each of the Notices in which it detailed why the Audible Effects Regulation did not apply to its Reloadable Aerial Shells, how the "poof/bang" test was arbitrary and capricious, and how the Reloadable Aerial Shells did not violate 16 C.F.R. § 1500.14(b)(7)(xv). Jake's also responded to other correspondence from the CPSC regarding the Notices.

78.     In addition, Jake's requested and was granted an informal hearing in the form of an in-person meeting between Jake's counsel and CPSC staff, including Robert Kaye, Director of the Office of Compliance and Field Operations, on December 14, 2017 at CPSC headquarters, in order to discuss their respective positions. At that meeting, CPSC staff maintained that they intended to enforce the existing regulations, as they understood them. Given that the CPSC staff has been delegated authority from the Commission to make enforcement decisions about the compliance of fireworks with 16 C.F.R. Part 1500, Jake's understood from these comments that the CPSC had completed its decision-making process with respect to these issues and that there were no further efforts Jake's could undertake to persuade the CPSC otherwise.

79.     Consistent with that understanding, the CPSC issued to Jake's three Notices of Noncompliance on December 20, 2018 (attached collectively as Exhibit K), regarding samples collected in April and May, 2018. Like the prior Notices, the December 20, 2018 Notices effectively demanded that Jake's destroy the remaining Detained Reloadable Aerial Shells. They further advised Jake's that sale or distribution in commerce of the referenced products could subject Jake's and its officers to criminal and civil penalties under 15 U.S.C. §§ 1264, 2069, and 2070.

80.     The CPSC issued another Notice of Noncompliance on April 9, 2019 (attached as

Exhibit L), regarding samples collected in October 2018.  Like the prior Notices, the April 9, 2019 Notice effectively demanded that Jake's destroy the remaining Detained Reloadable Aerial Shells. It further advised Jake's that sale or distribution in commerce of the referenced products could subject Jake's and its officers to criminal and civil penalties under 15 U.S.C. § 1264.

81.     Based on the Notices of Noncompliance and LOAs sent to Jake's by the CPSC periodically over the last approximately 15 years, Jake's has not sold the Reloadable Aerial Shells subject to the Notices at great economic cost to Jake's.  Moreover, Jake's has been required to quarantine at least 23,676 cases of the subject products, having a total value of approximately $2,651,712.

82.     On April 19, 2019, Jake's instituted an action in this Court against the CPSC and its then-Acting-Chairman seeking, *inter alia*, a declaratory judgment clarifying that the Audible Effects Regulation at issue does not apply to Jake's Reloadable Aerial Shells, or—in the alternative—that the agency's enforcement of the Audible Effects Regulation through use of the "poof/bang" test is arbitrary and capricious and therefore unlawful.  *See* Paragraph 8, *supra*.

83.     The CPSC moved to dismiss Jake's amended complaint.  On October 30, 2020, Judge Grimm granted the motion and dismissed the action without prejudice for lack of subject matter jurisdiction, based on a determination that the amended complaint did not demonstrate that the CPSC had taken "final agency action" as required for judicial review under the Administrative Procedure Act ("APA").  Referring to the May 20, 2015 Notice of Noncompliance at issue and the CPSC's Regulated Products Handbook, Judge Grimm held:

 In sum, based on my review of Jake's Fireworks allegations as well as the letters and Handbook, I conclude that the Notice was not the consummation of the Commission's decision-making process.  While the process was nearing its end, there are still steps that Jake's Fireworks may take, such as request for hearing or reconsideration.  Therefore, Jake's Fireworks has failed to satisfy the first prong of the *Bennett* [*v. Spear*, 520 U.S. 154 (1997)] test.

*Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 498 F. Supp. 3d 792, 807 (D. Md. 2020).  A copy of Judge Grimm's memorandum opinion is attached hereto as Exhibit M.

84.     Pursuant to Judge Grimm's ruling, Jake's again reviewed the available administrative appeal options provided in the Handbook and CSPC regulations and acted accordingly.  On November 13, 2020, Jake's counsel sent a letter to Robert Kaye, Director of the CPSC's Office of Compliance and Field Operations, in which Jake's reviewed the prior informal hearing process in which it had engaged with the CPSC, specifically requested identification of any additional steps that Jake needed to take in order to exhaust its administrative appeal options, and requested a meeting if the CPSC believed a meeting would be necessary to perfect the informal hearing process or would otherwise be helpful.  A copy of the November 13, 2020 letter is attached as Exhibit N.

85.     Mr. Kaye sent a responding letter on December 16, 2020, in which he stated that, pursuant to the Handbook, Jake's had the ability to submit "information bearing on the samples' compliance with the requirements of [the Audible Effects Regulation]."  The letter also discussed matters not directly relevant to the CPSC's consummation of its decision-making process as to whether Jake's products are subject to, and violate, the Audible Effects Regulation. Such additional matters included the status of import and entry bonds and the steps the CPSC must take in order to seek enforcement action in the future regarding the subject products if Jake's were to sell them.  A copy of the December 16, 2020 letter is attached as Exhibit O.

86.     On January 11, 2021, Jake's counsel sent a reply letter to Mr. Kaye.  In that letter, Jake's followed the instructions in the Handbook and the guidance in Mr. Kaye's December 16, 2020 letter by submitting information bearing on the compliance with the requirements of the Audible Effects Regulation.  Jake's provided a detailed summary of the reasons and evidence

demonstrating that the ban in the Audible Effects Regulation does not apply to its Reloadable Aerial Shells (which therefore "comply" with the regulation).   Jake's also referred to and incorporated its prior correspondence demonstrating that the "poof/bang" test is arbitrary and capricious.  In the same letter, Jake's requested that the CPSC confirm that it has determined that the Audible Effects Regulations applies to Jake's fireworks, notwithstanding Jake's contrary arguments; that Jake's received an in-person hearing on December 14, 2017; and that Jake's had exhausted its administrative appeals of the issues raised in the Notices.  In an abundance of caution, Jake's again requested an in-person hearing with staff if the CPSC did not agree with these points. A copy of the January 11, 2021 letter is attached as Exhibit P.

87.     Mr. Kaye sent a very brief responding letter on February 8, 2021.  That letter did not address any of the arguments or evidence that Jake's presented in its January 11, 2021 letter, and did not confirm any of the requested points bearing on final agency action.  Rather, Mr. Kaye's letter essentially ignored these issues and conflated the *separate* issue of potential future enforcement actions against Jake's—if it were to sell the subject products—with the matters at hand that bear on whether the products may lawfully be sold.  That is, Mr. Kaye confused the initiation of an enforcement action—which has not yet happened—with the separate issue of whether, under the FHSA, the CPSC has taken final agency action by determining that the Audible Effects Regulation applies to these products and that, by application of the "poof/bang" test, the products violate that regulation—which has happened.  Mr. Kaye concluded by informing Jake's that its "request for an informal hearing is premature because we have not notified you that the Commission intends to take further action against Jake's or its products."  A copy of the February 8, 2021 letter is attached as Exhibit Q.

88.     Mr. Kaye's December 16, 2020 and February 8, 2021 letters, combined with the

agency's earlier notices and actions, including specifically the Notices of Noncompliance dated May 20, 2015, March 7, 2016, December 20, 2018 and April 9, 2019, demonstrate that the CPSC has taken final agency action with respect to the agency's erroneous determinations that (1) Jake's small reloadable aerial shell fireworks are banned by the Audible Effects Regulation, and that (2) the CPSC's "poof/bang" test, which the agency has used at least since the 1999 *Shelton* decision, is a valid method of determining whether Jake's products violate that ban. These letters and notices collectively reflect consummation of the agency's decision-making process, determine Jake's rights and obligations, and have legal consequences for Jake's. Unlike CPSC staff actions under the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq*., which do not alter a manufacturer's legal rights and obligations on their own, Notices of Noncompliance issued under the FHSA establish a manufacturer's legal rights and obligations and have legal consequences (including the purported creation of a "knowing violation") with no further action required by the full Commission. *Compare* 15 U.S.C. § 2064(c)(1) (CPSA provision indicating that the Commission "may order" a manufacturer to cease distribution of a product) *with* 15 U.S.C. § 1263(a) (FHSA provision rendering it unlawful to introduce a banned product into commerce). And, CPSC regulations and the Handbook show that no further procedures are available to Jake's or needed by the CPSC to consummate its decision-making process as to these issues.

89.     The clear legal jeopardy in which the CPSC's Notices of Noncompliance place Jake's if, notwithstanding the receipt of the notices, Jake's were to market the affected products have and will continue to deprive Jake's of the ability to avail itself of significant business opportunities with respect to the affected products. That the CPSC asserts that the Notices do not, in and of themselves, outright prohibit Jake's from selling the products does not mean that the Notices lack legal effects or consequences. *See*, *e.g. Spirit Airlines, Inc. v. United States Dep't of*

*Transp.*, No. 19-1248, slip op. at 8-9 (D.C. Cir. May 21, 2021) ("We can see, however, that an agency's action need not flatly prohibit a party from acting in order to affect its legal rights; it is enough that the agency action presently and directly limits or defeats a party's ability to enter in an advantageous business arrangement.").

90.     As the D.C. Circuit recognized recently in *Spirit Airlines*, even governmental action that leaves an entity free to sell its products to *some* entities, while restricting it from selling the products to *others*, determines legal rights and obligations, and has legal consequences sufficient for finality.  *See Spirit Airlines, Inc. v. United States Dep't of Transportation & Fed. Aviation Admin.*, 997 F.3d 1247, 1252-53 (D.C. Cir. 2021) (discussing *Safe Extensions, Inc. v. FAA*, 509 F.3d 593 (D.C. Cir. 2007)).  In fact, the Federal Aviation Administration's ("FAA") actions in *Spirit Airlines* left the regulated entities far more options than do the CPSC's Notices at issue here. As the D.C. Circuit noted, Spirit Airlines is "legally free to operate unapproved flights" notwithstanding the FAA order under review in the case.  *Id*. at 1253.  "The FAA's action, however, effectively forecloses Spirit from operating as many peak-period flights as it would otherwise do. In this way, the FAA's action hinders Spirit's ability to pursue business opportunities as surely as would an express prohibition." *Id.* at 1253.  Here, the CPSA's actions "effectively foreclose" Jake's from selling the affected products to *anyone*, and they do so in a particularly intrusive and threatening way: by rendering sales of the products illegal and exposing Jake's to enhanced penalties, including criminal penalties.

91.     Alternatively, judicial review is available under the APA because, on information and belief, the CPSC has in fact consummated its decision-making process as to these issues but is refusing to so acknowledge, as part of a strategy to evade judicial review permanently while prohibiting Jake's from selling its lawful products.  After all, the CPSC is aware that Jake's is

unlikely to sell the subject Reloadable Aerial Shells in the face of repeated threats by the agency to pursue civil and/or criminal penalties against Jake's or its officers if it does so.

**B.      The CPSC's Application of the Audible Effects Regulation is Unlawful.**

92.      The CPSC has a legal duty to apply correctly its regulations banning certain products, including the Audible Effects Regulation.

93.      As discussed above, the Audible Effects Regulation does not apply to these small reloadable aerial shells.

94.      The CPSC's application of the Audible Effects Regulation to Jake's Reloadable Aerial Shells, including the Detained Reloadable Aerial Shells, is arbitrary, capricious, an abuse of discretion and unlawful.

95.       The CPSC's application of 16 C.F.R. § 1500.14(b)(7)(xv) (the Reports Labeling Requirement) to Jake's Reloadable Aerial Shells, including the Detained Reloadable Aerial Shells, is arbitrary, capricious, an abuse of discretion and unlawful.  Nothing in the general fireworks labeling rule contains any requirement to identify "reports" or any other audible effect.  Thus, there is no "Reports Labeling Requirement."

96.      The CPSC's "poof/bang" test to determine whether Jake's products are "intended to produce an audible effect" and whether they should be labeled as requiring reports is an unreasonable methodology, and is arbitrary, capricious, an abuse of discretion and unlawful.  The subjective and unrepeatable nature of the "poof/bang" test applied by the CPSC means that manufacturers or importers, such as Jake's, cannot determine, prior to importing the devices, whether Reloadable Aerial Shells comply with CPSC regulations despite testing by an independent, non-profit third-party laboratory.  Rather, the manufacturer and importer does not learn of the alleged violation until the small reloadable aerial shells have reached the port and the

CPSC tests them and renders its subjective and arbitrary judgment.

97.     Nevertheless, the CPSC continues to unlawfully apply the Audible Effects Regulation and the purported Reports Labeling Requirement to Jake's Reloadable Aerial Shells, including the Detained Reloadable Aerial Shells, and to apply the arbitrary, capricious, abusive of discretion and unlawful "poof/bang" test.  Indeed, as time goes on, the CPSC has accelerated the sampling of Jake's Reloadable Aerial Shells, and the number of Detained Reloadable Aerial Shells continues to increase.  Based on its past pattern and practice of conduct, and on information and belief, the CPSC will continue to sample and detain Jake's Reloadable Aerial Shells in the future, will increase its rate of sampling, will continue to apply the Audible Effects Regulation and the purported Reports Labeling Requirement to Jake's Reloadable Aerial Shells, and will continue to apply the arbitrary, capricious, abusive of discretion and unlawful "poof/bang" test.  As a result, the number of Detained Reloadable Aerial Shells will continue to increase, at great cost, including significant lost business opportunities, to Jake's.

98.     The unlawful application of the Audible Effects Regulation causes Jake's irreparable harm through loss or destruction of products intended for commerce, delay in introducing products into commerce in a timely and planned manner, inability to introduce products into commerce during major selling seasons, inability to maintain an adequate stock of products for seasonal sales, unquantifiable loss of customers, unquantifiable lost sales, and other unquantifiable losses.

99.     The unlawful application of the Reports Labeling Requirement to Jake's Reloadable Aerial Shells causes Jake's irreparable harm through loss or destruction of products intended for commerce, delay in introducing products into commerce in a timely and planned manner, inability to introduce products into commerce during major selling seasons, inability to

maintain an adequate stock of products for seasonal sales, unquantifiable loss of customers, unquantifiable lost sales, and other unquantifiable losses.

100.   The unlawful application of the "poof/bang" test causes Jake's irreparable harm through loss or destruction of products intended for commerce, delay in introducing products into commerce in a timely and planned manner, inability to introduce products into commerce during major selling seasons, inability to maintain an adequate stock of products for seasonal sales, unquantifiable loss of customers, unquantifiable lost sales, and other unquantifiable losses.

101.   For all these reasons, Jake's seeks a declaration that the Audible Effects Regulation is not applicable to small reloadable aerial shells, and its application to small reloadable aerial shells is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

102.   Jake's also seeks a declaration that the Labeling Regulation does not require that small reloadable aerial shells have a warning label informing users that they may emit loud reports upon use, because no such requirement exists.

103.   Jake's also seeks a declaration that the CPSC's use of its "poof/bang" test (or "ear" test) in making the determination whether small reloadable aerial shells are "intended to produce audible effects" within the meaning of the Audible Effects Regulation, or to determine the applicability of the purported Reports Labeling Requirement, is unreasonable, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## FIRST CAUSE OF ACTION
**(Violation of the Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action) (Application of 16 C.F.R. § 1500.17(a)(3))**

104.   Jake's incorporates by reference paragraphs 1 through 103 as though restated herein.

105.   By applying the Audible Effects Regulation to the Reloadable Aerial Shells, the

CPSC has violated, and will continue to violate, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.

106.    Application of the Audible Effects Regulation to Reloadable Aerial Shells is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law, because the Reloadable Aerial Shells are 1.4G consumer fireworks containing only propelling and expelling charges to which those regulations have never applied.

107.    Mr. Kaye's December 16, 2020 letter and February 8, 2021 letter, combined with the CPSC's earlier notices and actions, including specifically the Notices of Noncompliance dated May 20, 2015, March 7, 2016, December 20, 2018 and April 9, 2019, is final agency action, and there is no other adequate remedy in a court.

**SECOND CAUSE OF ACTION**
**(Violation of The Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary And Capricious Agency Action) (Application Of Non-Existent Reports Labeling Requirement)**

108.    Jake's incorporates by reference paragraphs 1 through 107 as though restated herein.

109.    By applying a non-existent reports labeling  requirement to the Reloadable Aerial Shells, the CPSC has violated, and will continue to violate, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.

110.    Application of a reports labeling requirement to Reloadable Aerial Shells is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law, because no such requirement exists in the pertinent regulations.  Nor, as the CPSC itself has acknowledged, would any such requirement be justified by a hazard.

111.    Mr. Kaye's December 16, 2020 letter and February 8, 2021 letter, combined with the CPSC's earlier notices and actions, including specifically the Notices of Non-Compliance

dated May 20, 2015, March 7, 2016, December 20, 2018 and April 9, 2019, is final agency action, and there is no other adequate remedy in a court.

### THIRD CAUSE OF ACTION
**(Violation of the Administrative Procedure Act for Abuse of Discretion and Unlawful, Arbitrary and Capricious Agency Action) (Use of "Poof/Bang" Test)**

112.    Jake's incorporates by reference paragraphs 1 through 111 as though restated herein.

113.    By applying the Audible Effects Regulation and purported Reports Labeling Requirement and in using the "poof/bang" test, the CPSC has violated, and will continue to violate, the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.

114.    Even if the Audible Effects Regulation and purported Reports Labeling Requirement did apply to 1.4G consumer fireworks, using the "poof/bang" test to determine compliance with these regulations would be arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law.   The test is inherently unreasonable, subjective and unreliable, as the CPSC staff itself has acknowledged and as is evident from the test itself because the test can produce varying results depending on the individual administering the test, the equipment utilized by the individual administering the test, and the prevailing weather and environmental conditions (such as wind speed and direction) at the time and place the test is administered.

115.    The test's unreasonable and subjective nature also is apparent from the fact that identical Jake's Reloadable Aerial Shells tested in the same general time frame were found to comply with regulations.   The CPSC determined that some samples of the Detained Reloadable Aerial Shells did not comply with regulations when originally tested, but complied with regulations when retested.

116.    Using the "poof/bang" test also is unreasonable, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in that its subjectivity makes it impossible for Jake's or other fireworks importers, distributors, or producers to know, before actual CPSC testing, when they will be deemed to be shipping, receiving, or distributing non-compliant products.

117.    Using the "poof/bang" test also is unreasonable, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in that there is no basis for the CPSC to determine that a Reloadable Aerial Shell deemed to be "intended to produce audible effects" by application of the "poof/bang" test is any more hazardous or likely to injure a consumer than a Reloadable Aerial Shell determined by application of the "poof/bang" test *not* to be "intended to produce audible effects."

118.    Mr. Kaye's December 16, 2020 letter and February 8, 2021 letter, combined with the CPSC's earlier notices and actions, including specifically the Notices of Noncompliance dated May 20, 2015, March 7, 2016, December 20, 2018 and April 9, 2019, is final agency action, and there is no other adequate remedy in a court.

## PRAYERS FOR RELIEF

WHEREFORE, Jake's requests the entry of an Order with this relief:

A.    A declaration that Jake's Reloadable Aerial Shells are not subject to the Audible Effects Regulation (16 C.F.R. § 1500.17(a)(3)) as currently promulgated, both in the past and continuing into the future.

B.    A declaration that there is no "Reports Labeling Requirement" contained within the fireworks labeling regulation (16 C.F.R. § 1500.14(b)(7)) as currently promulgated, both in the past and continuing into the future.

C.      A preliminary and permanent injunction prohibiting the CPSC from applying the Audible Effects Regulation (16 C.F.R. § 1500.17(a)(3)) and any Reports Labeling Requirement under the fireworks labeling regulation (16 C.F.R. § 1500.14(b)(7)) as currently promulgated to Jake's Reloadable Aerial Shells.

D.      A declaration that using the "poof/bang" test by the CPSC to determine whether a Reloadable Aerial Shell is "intended to produce audible effects" and subject to the Audible Effects Regulation (16 C.F.R. § 1500.17(a)(3)) and any Reports Labeling Requirement under the Labeling Regulation (16 C.F.R. § 1500.14(b)(7)) is unreasonable, arbitrary, capricious, an abuse of discretion and unlawful.

E.      A preliminary and permanent injunction prohibiting the use of the "poof/bang" test by the CPSC to determine whether a Reloadable Aerial Shell is "intended to produce audible effects" and subject to the Audible Effects Regulation (16 C.F.R. § 1500.17(a)(3)) and any Reports Labeling Requirement under the fireworks labeling regulation (16 C.F.R. § 1500.14(b)(7)).

F.      Awarding Jake's its costs and reasonable attorney's fees in defending itself before the CPSC and in pursuing this action under the Equal Access to Justice Act (28 U.S.C. § 2412) and under such other authorities that may authorize this relief.

G.      Granting to Jake's such other and further relief as the Court deems necessary and appropriate.

Dated: August 13, 2021                    /s/ Timothy L. Mullin, Jr.
                                          Timothy L. Mullin, Jr.
                                          Federal Bar Number 00082
                                          Miles & Stockbridge P.C.
                                          100 Light Street
                                          Baltimore, MD  21202
                                          (410) 385-3641 (direct dial)
                                          (410) 385-3700 (fax)
                                          tmullin@milesstockbridge.com

*/s/ Dwight W. Stone  II*

Dwight W. Stone II
Federal Bar Number 22968
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD  21202
(410) 385-3649 (direct dial)
(410) 385-3700 (fax)
dstone@milesstockbridge.com

*/s/ Joshua F. Kahn*

Joshua F. Kahn
Federal Bar Number 18238
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD  21202
(410) 385-3411 (direct dial)
(410) 385-3700 (fax)
jkahn@milesstockbridge.com

*/s/ Erika Z. Jones*

Erika Z. Jones
Federal Bar Number 20601
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC  20006-1101
(202) 263-3232 (direct dial)
(202) 263-5232 (fax)
ejones@mayerbrown.com

Adam C. Sloane
(*pro hac vice* admission application to
be filed)
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC  20006-1101
(202) 263-3269 (direct dial)
(202) 263-5232 (fax)
asloane@mayerbrown.com

Ankur Mandhania
(*pro hac vice* admission application to
be filed)
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC  20006-1101
(202) 263-3011 (direct dial)
(202) 263-5232 (fax)
amandhania@mayerbrown.com

*Counsel for Plaintiff*