## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAKE'S FIREWORKS INC.,

    Plaintiff,

    v.

UNITED STATES CONSUMER PRODUCT
SAFETY COMMISSION and
ALEXANDER HOEHN-SARIC,
*in his official capacity,*

    Defendants.

Civil Action No. TDC-21-2058

## MEMORANDUM OPINION

For the second time, Plaintiff Jake's Fireworks Inc. ("Jake's Fireworks") has filed a civil action in this Court alleging that the United States Consumer Product Safety Commission and its Chairman (collectively "the CPSC") have applied certain regulations and testing procedures to its "Excalibur" line of fireworks in an arbitrary and capricious manner, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2018). Jake's Fireworks seeks declaratory and injunctive relief as well as attorney's fees and costs. The CPSC has filed a Motion to Dismiss for lack of subject matter jurisdiction, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion to Dismiss will be GRANTED.

## BACKGROUND

The factual background and procedural history of this dispute prior to October 2020, as well as the relevant legal framework, are set forth in detail in the opinion of the Court in Jake's Fireworks's first civil action against the CPSC, *Jake's Fireworks v. CPSC* ("*Jake's Fireworks I*"),

498 F. Supp. 3d 792 (D. Md. 2020), in which Judge Paul W. Grimm dismissed a nearly identical case for lack of subject matter jurisdiction because there had been no final agency action. *Id.* at 799-800. Judge Grimm's opinion in *Jake's Fireworks I* is incorporated by reference in its entirety, and this Court will therefore only summarize the pre-2020 background and will focus on the events following the issuance of that opinion.

## I.     Notices of Non-Compliance

Jake's Fireworks is among the largest importers and distributors of consumer fireworks in the United States, with distribution centers in seven states from which it sells fireworks to consumers in over 20 states. Among the consumer fireworks sold by Jake's Fireworks are those classified as "reloadable aerial shell" fireworks, which are shot from a mortar tube or launch tube. Compl. ¶ 19, ECF No. 1. Reloadable aerial shell fireworks are classified as either "Display fireworks," which must be launched by licensed operators, or as "Consumer fireworks," which may be launched by ordinary consumers. *Id.*

At various points from 2014 to 2019, Compliance Officers from the CPSC Office of Compliance and Field Operations ("OCFO") issued to Jake's Fireworks multiple Notices of Non-Compliance ("Notices"), sometimes referred to by the CPSC as Letters of Advice, which asserted that certain reloadable aerial shell fireworks violated regulations under the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261(q)(1)(B) (2018), particularly based on the finding from sample testing that they were "intended to produce audible effects" and "the audible effect is produced by a charge of more than 2 grains of pyrotechnic composition." 16 C.F.R. § 1500.17 (2023); Compl. ¶ 66. Jake's Fireworks has responded to the Notices by requesting that the CPSC rescind the Notices based on its position that its reloadable Aerial Shell Fireworks ("the Aerial Shell Fireworks") are not banned hazardous substances because they are not "fireworks devices

2

intended to produce audible effects," 16 C.F.R. § 1500.17(a)(3), and that the CPSC's testing methodology is improper. Though the OCFO staff at one point agreed to re-test certain of the sampled fireworks products and on that basis rescinded some of the relevant Notices, Compl. ¶ 74, the OCFO staff continued to conduct sample tests on the Aerial Shell Fireworks and to issue Notices to Jake's Fireworks.

Pursuant to procedures outlined in the OCFO Regulated Products Handbook ("the Handbook"), Jake's Fireworks made written submissions in support of its position and also received an in-person meeting with OCFO Director Robert Kaye and OCFO staff on December 14, 2017. At the meeting, however, the staff reiterated that they intended to enforce the existing regulations as they understood them. Since the meeting, OCFO has continued to issue Notices. For example, an April 9, 2019 Notice, signed by an OCFO Compliance Officer, stated that based on certain testing, "the sampled lot is a banned hazardous substance" under FHSA regulations, and that "the staff requests that the distribution of the sampled lots . . . not take place and that the existing inventory be destroyed." 4/9/19 Notice at 3, Compl. Ex. L, ECF No. 1-12. It further outlined certain steps that must be followed, if Jake's Fireworks chose to destroy the inventory, in order to provide proper documentation. The April 9, 2019 Notice also warned Jake's Fireworks that selling a banned hazardous substance would violate the law and subject it to civil penalties and possibly criminal prosecution. Finally, the Notice informed Jake's Fireworks that if it disagrees with the OCFO staff's position, it can follow the procedure in the Handbook to present its views and supporting evidence, and it requested a response on how Jake's Fireworks would respond to the Notice. As a result of the Notices, Jakes's Fireworks asserts that it has not sold the Aerial Shell Fireworks alleged to be banned hazardous substances, which has caused it significant financial harm.

3

## II.   *Jake's Fireworks I*

In 2019, Jake's Fireworks filed *Jakes Fireworks I*, alleging that the CPSC's Notices and determinations that the Aerial Shell Fireworks violated the FHSA constituted arbitrary and capricious agency action in violation of the APA and also violated Jake's Fireworks's right to due process of law under the Fifth Amendment to the United States Constitution. *Jake's Fireworks I*, 498 F. Supp. 3d at 800. The CPSC filed a motion to dismiss for lack of subject matter jurisdiction in which it argued that the Notices did not constitute "final agency action" as is required before a plaintiff may file a civil action under the APA. *See* 5 U.S.C. § 704.

To determine whether the CPSC's actions constituted final agency action, Judge Grimm applied the two-pronged approach mandated by *Bennett v. Spear*, 520 U.S. 154 (1997), which requires that (1) the action mark the "consummation of the agency's decisionmaking process"; and (2) the action be "one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (citations omitted); *see Jake's Fireworks I*, 498 F. Supp. 3d at 802. As to the first prong, Judge Grimm concluded that the Notices were not the "consummation of the Commission's decision-making process." *Jake's Fireworks I*, 498 F. Supp. 3d at 806. In particular, Judge Grimm found that the Notice at issue was "an intermediate ruling of a subordinate official" who lacked the "independent authority to initiate enforcement action that could expose Jake's Fireworks to civil or criminal penalties without first obtaining the approval of the Commission's Office of the General Counsel." *Id.* at 803. Rather, as noted in the Handbook, if the subject of a Notice "declines to take corrective action, the staff may request the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint, injunctive action, seizure action, or such other action a may be appropriate." *Id.* Judge Grimm noted that although after discussions with the subject of the Notice, the CPSC staff "may request

4

that the Commission . . . approve appropriate legal proceedings and, generally, will provide a written notification before that happens," "[no] enforcement proceedings have been initiated, and the Notice does not indicate in any way that an enforcement action will be pursued by the staff." *Id.* at 804. Judge Grimm further noted that "[w]hile the process may be nearing its end, there are still steps that Jake's Fireworks may take, such as request a hearing or reconsideration." *Id.* at 806. Because *Bennett* requires that both prongs be satisfied, Judge Grimm concluded that the failure to satisfy the first prong warranted dismissal for lack of subject matter jurisdiction. *Id.* at 806-07.

**I.      Post-*Jake's Fireworks I* Events**

Since *Jake's Fireworks I*, Jake's Fireworks has taken additional steps. In a November 13, 2020 letter to OCFO Director Kaye, Jake's Fireworks requested that OCFO either inform it of what steps it could take to "perfect the informal hearing process," including requesting another meeting, or confirm that Jake's Fireworks had "exhausted [its] administrative appeals and that your determinations expressed in the Notices stand." 11/13/20 Letter at 2-3, Compl. Ex. N, ECF No. 1-14. In a responsive letter dated December 16, 2020, Director Kaye clarified that while the lots of imported fireworks referenced in the Notice were conditionally released to Jake's Fireworks under an "import and entry bond," OCFO staff had never requested that U.S. Customs and Border Protection ("CBP") take any action such as demanding the return of the fireworks, the conditional release periods had all expired, and as a result neither OCFO staff nor CBP could take further action regarding the bonds such as to require the return of the fireworks. 12/16/20 Letter at 1, Compl. Ex. O, ECF No. 1-15. Director Kaye further stated that Notices "are an initial determination in the Commission's process," and that "issuance of a Notice of Non-Compliance by a Compliance Officer does not constitute a final determination by the Commission subject to enforcement in federal court, nor does it complete the agency's decision-making process." *Id.* at

5

1-2. Director Kaye noted that Jake's Fireworks could still submit "information bearing upon the samples' compliance with the requirements of 16 C.F.R. § 1500.17(a)(3)." *Id.* He further clarified that in order to take an enforcement action, OCFO staff would have to refer the matter to the CPSC Office of the General Counsel ("OGC"), and that the five-member Commission ("the Commission") would have to approve any recommendation for a referral for an enforcement action. Director Kaye also informed Jake's Fireworks that if an enforcement action were to be taken by the CPSC, whether to seek civil penalties or an injunction, Jake's Fireworks would be notified in writing prior to the commencement of any such enforcement action. Thus, Director Kaye concluded "there has been no final determination by the Commission with respect to the samples identified in the Notices." *Id.* at 3.

In a letter dated January 11, 2021, Jake's Fireworks reiterated its request that Director Kaye confirm that it had exhausted the informal hearing process or, in the alternative, that the CPSC grant Jake's Fireworks an in-person hearing with CPSC staff or confirm that it is free to sell the Aerial Shell Fireworks "without risk of civil or criminal penalties." 1/11/21 Letter at 6, Compl. Ex. P, ECF No. 1-16. Jake's Fireworks also re-stated its arguments on the non-applicability of 16 C.F.R. § 1500.17(a)(3) to the Aerial Shell Fireworks, including by stating that its reloadable Aerial Shell Fireworks are not "intended to create an audible effect." 1/11/21 Letter at 5. Director Kaye responded by sending a letter on February 8, 2021 in which he stated that the request for a hearing was "premature" because the CPSC had "made no final determination regarding Jake's or the samples that were the subject of the Notices." 2/8/21 Letter at 1, Compl. Ex. Q, ECF No. 1-17.

## II.    The Complaint

On August 13, 2021, Jake's Fireworks again filed suit to challenge the Notices based on its position that the agency action is now final. Jake's Fireworks asserts three counts of violations

6

of the APA based on alleged arbitrary and capricious agency actions arising from the Notices, including (1) the CPSC's application of 16 C.F.R. § 1500.17(a)(3) to deem the Aerial Shell Fireworks to be banned hazardous substances under the FHSA; (2) the CPSC's imposition of a labeling requirement pursuant to 16 C.F.R. § 1500.14(b)(7); and (3) the CPSC's use of a particular test to assess fireworks' compliance with the regulations. The Notices at issue, as attached to the Complaint, are those dated August 19, 2014; September 18, 2018; December 20, 2018; and April 9, 2019. Compl. Exs. C, E, K, L, ECF Nos. 1-3, 1-5, 1-11, 1-12. Jake's Fireworks seeks declaratory and injunctive relief to prevent CPSC from applying 16 C.F.R. § 1500.17(a)(3) and 16 C.F.R. § 1500.14(b)(7) to its Aerial Shell Fireworks.

In the Complaint, Jake's Fireworks alleges that Director Kaye's letters of December 16, 2020 and February 8, 2021, along with the earlier Notices, demonstrate that the CPSC has taken final agency action on the issues underlying the Complaint. Jake's Fireworks argues that these communications demonstrate that the CPSC's decision-making process has in fact been consummated, and that the failure to acknowledge that it is complete is a "strategy to evade judicial review permanently while prohibiting Jake's [Fireworks] from selling its lawful products." Compl. ¶ 91. As a result, Jake's Fireworks faces "clear legal jeopardy" and is deprived "of the ability to avail itself of significant business opportunities with respect to the affected products." Compl. ¶ 89.

## DISCUSSION

In its Motion to Dismiss, the CPSC alleges that this case should be dismissed for lack of subject matter jurisdiction because (1) Jake's Fireworks lacks standing; (2) any agency action is not final and is therefore unreviewable; and (3) the matter is not ripe.

7

I.      **Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal for lack of subject matter jurisdiction. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. A court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1991) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans*, 166 F.3d at 647.

II.     **The Regulatory Scheme**

Before considering the specific arguments in the Motion, the Court first identifies the statutory and regulatory framework at issue. "The decisionmaking processes set out in an agency's governing statutes and regulations are key to determining whether an action is properly attributable to the agency and represents the culmination of that agency's consideration of an issue." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018).

The CPSC and CBP, a component agency of the United States Department of Homeland Security, jointly operate a monitoring program for imported goods under which they have authority

8

to examine samples of an imported product, determine if it is a banned hazardous substance under the FHSA, and then order any such product destroyed or exported back out of the United States. 15 U.S.C. § 2066(h); §§ 1273(a), (b). Under this system, imported goods subject to examination may be conditionally released to the importer on a bond pending a decision on whether the product at issue constitutes a banned hazardous substance. 15 U.S.C. § 1273(b). Pursuant to the bond, the importer agrees that conditionally released imported product must be returned to CBP if a determination is made that the product fails to comply with laws such as the FHSA and CBP makes a demand for redelivery of the product within 30 or 60 days after the initial release of the product. 19 C.F.R. § 113.62(d). At that point, CBP may order that the product be destroyed, that it be modified if that would bring the product into compliance with the FHSA, or, upon application of the product owner or importer, that it may be exported back out of the United States. 15 U.S.C. §§ 2066(c), (e). Before such action is taken, the owner is notified in writing that the product is subject to refusal of admission, and there may be an informal hearing on the product's admissibility or on whether modification could bring the product into compliance with the FHSA. 16 C.F.R. § 1500.268. If, at the conclusion of this process, the owner does not destroy the product, the owner is liable for the costs of destruction by the United States government. 15 U.S.C. § 2066(f).

Because conditional release bonds expire within 30 to 60 days, 19 C.F.R. § 113.62(d), CBP must make a determination on the admissibility of the product within that time period. After the expiration of the conditional release bond, the product may be subject to "liquidation" by CBP in that any duties are finally computed and the product enters interstate commerce. 19 C.F.R. § 159.1. After liquidation, CBP may not demand the return of product, even if the product was previously subject to a conditional release bond. 19 C.F.R. § 141.113(h) (establishing the time limitation on demands for return to CBP custody); *id.* § 141.113(d) (authorizing CBP to demand the return of

unliquidated products to CBP custody). With limited exceptions not relevant here, all imported products are deemed liquidated by operation of law one year after the date of entry to the United States. 19 C.F.R. § 159.11. At that point, CBP's border authority to order imported products destroyed or exported out of the United States on the basis that they violate the FHSA ends. *Id.* § 141.113(h).

After the product is deemed to have cleared the border and entered interstate commerce, a different regime applies based on the CPSC's authority to enforce the FHSA as to products in domestic commerce. If after importation the product is still believed to be a banned hazardous substance, the CPSC may order that the seller give notice to consumers that the product is hazardous; that the seller make modifications to bring the product into compliance; or that the seller replace or refund the banned hazardous product. 15 U.S.C. § 1274(a), (b). Those remedies must be ordered by the Commission and only after notice and the opportunity for a formal hearing on the record. 15 U.S.C. § 1274(e); 16 C.F.R. § 1025.1 (providing that remedies under 15 U.S.C. § 1274 "are required by statute to be determined on the record after opportunity for public hearing").

Alternatively, the CPSC may seek seizure of the product, civil penalties, or injunctive relief through an enforcement action in federal court. 15 U.S.C. §§ 1264(c), 1265, 1267. To pursue such an action, OCFO must make a recommendation as to what specific enforcement action should be sought; OCFO itself does not carry out mandatory enforcement actions or proceedings in federal court. 16 C.F.R. § 1000.21. Any enforcement action for civil penalties in federal court is subject to a review by OGC and Commission approval before the commencement of the action. 15 U.S.C. § 2076(b)(7)(A); 16 C.F.R. § 1000.14. Before the CPSC seeks a civil penalty, the product owner must be notified in writing and is entitled to submit evidence and arguments against the imposition

of a civil penalty and the particular penalty amount. 16 C.F.R. § 1119.5. Finally, the Commission, advised by OGC, may refer the matter to the U.S. Department of Justice ("DOJ") for criminal investigation or prosecution. 15 U.S.C. § 1264(a), 1266, 2076(b)(7)(B); 16 C.F.R. § 1000.14. By statute, the CPSC must provide "appropriate" notice and an opportunity to present oral or written information before it reports the violation to DOJ for prosecution. 15 U.S.C. § 1266.

Here, the Aerial Shell Fireworks were subject to a 60-day bond. Notice of Conditional Release at 1, Compl. Ex. A, ECF No. 1-1; 19 C.F.R. § 113.62(d). As noted by Director Kaye in his December 16, 2020 letter, CBP has not directed that Jake's Fireworks destroy or export the Aerial Shell Fireworks out of the country, and the bonds relating to the fireworks at issue in the Notices have expired, as has period of time to CBP to direct such action. 12/16/20 Letter at 1. Accordingly, the CPSC's issuance of the Notices are properly construed as pursuant to the CPSC's domestic authority as outlined above.

## III.   Standing

As an initial matter, the CPSC argues that Jake's Fireworks lacks standing to seek injunctive relief because it is not under threat of an injury in fact based on the Notices. Because Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," plaintiffs in federal civil actions must demonstrate standing to assert their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" requirements of standing consist of three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 560–61 (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

11

conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). In the present case, only the first two prongs are at issue.

Jake's Fireworks has successfully alleged an injury in fact traceable to the Notices. The Notices identify the Aerial Shell Fireworks as banned hazardous substances, and based on the warnings provided in the Notices themselves, Jake's Fireworks faces potential civil and criminal penalties if it sells those fireworks. Jake's Fireworks has asserted that based on the Notices, it has refrained from selling the Aerial Shell Fireworks that are subject to the Notices, which have a value of over $2.6 million, and has lost the ability to "avail itself of significant business opportunities" relating to such fireworks. Compl. ¶ 89. Where Jake's Fireworks has withheld its products from commerce as a direct consequence of its receipt of the Notices, this economic loss is fairly traceable to the CPSC. Where the voluntary compliance regime evidenced by the Notices is intended to produce this exact effect of causing companies to refrain from selling potentially offending products, the CPSC cannot credibly claim that Jake's Fireworks has not suffered an injury traceable to the Notices. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.* 997 F.3d 1247, 1253 n.3 (D.C. Cir. 2021) (finding that a regime for voluntary compliance with approved airline schedules for Newark International Airport was not truly voluntary where the Federal Aviation Administration warned that deviation from the schedule could result in a return to strict controls because a "request for help backed by a threat hardly seems a call for voluntary action").

Even if the economic loss resulting from the failure to sell the fireworks were deemed to be the result of a purely voluntary choice, Jake's Fireworks still faces an imminent injury because if it were to sell the fireworks in defiance of the Notices, as it has stated that it would do in the absence of the Notices, it would likely face civil penalties. Opp'n at 11-12, ECF No. 17; *see, e.g.*, 4/9/19 Notice at 4. As Jake's Fireworks points out, certain courts have found that the facts that

fireworks failed a CPSC test and Notices were issued can constitute evidence that a violation was "knowing" for purposes of civil penalty actions in federal court. *See, e.g., United States v. Shelton Wholesale, Inc.*, No. 96-6131-CV-SJ, 1998 WL 251273, at *3, *11 (W.D. Mo. 1998). Thus, the injury here, whether actual or imminent, is not conjectural or hypothetical, nor is it based on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2012). Where the injury is also traceable to the issuance of the Notices, Jake's Fireworks has established standing to seek injunctive relief.

## IV.     Final Agency Action

Jake's Fireworks contends that in light of the two most recent letters by Director Kaye in which he denied its request for a finality determination, the Notices are effectively final agency actions as defined in the APA, which includes an agency "order," "sanction," or denial of "relief." 5 U.S.C. § 551(13). CPSC contends that the Notices are not agency actions at all, and that if they are agency actions, they are not "final agency action[s]" suitable for judicial review. Mot. Dismiss at 14, ECF No. 16-1. This Court will assume without deciding that the Notices were agency actions and will instead focus on the issue of whether they were final agency actions. *Jake's Fireworks I*, 498 F. Supp. 3d at 805.

Standing is a constitutional inquiry; the APA's final agency action requirement is statutory. 5 U.S.C. § 704. Nevertheless, a final agency action is a jurisdictional requirement in an APA action. *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019); *Am. Acad. of Pediatrics v. Food & Drug Admin.*, 379 F. Supp. 3d 461, 474 (D. Md. 2019). The United States Supreme Court has established a two-pronged test to determine whether an agency's action is final. "First, the action must mark the consummation of the agency's decisionmaking process" and "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78. Second, "the

13

action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Id.* Both prongs must be satisfied before a court may review purported agency action. *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010).

In its Motion, the CPSC argues that no final agency action has been taken or consummated in the form of an enforcement action, and that any future enforcement action requires independent decisionmaking by entities other than OCFO staff, including the Commission itself. In *Jakes Fireworks I*, Judge Grimm already determined that the Notices were not "consummation of the Commission's decision-making process." *Jake's Fireworks I*, 498 F. Supp. 3d at 806. Rather, the Notices constitute "intermediate ruling[s] of a subordinate official" who lacked the "independent authority to initiate enforcement action that could expose Jake's Fireworks to civil or criminal penalties without first obtaining the approval of the Commission's Office of the General Counsel." *Id.* at 803. That ruling remains sound and will not be revisited. In this new case, Jake's Fireworks argues that the first prong is now satisfied because (1) Judge Grimm stated in *Jake's Fireworks I* that "[w]hile the process may be nearing its end, there are still steps that Jake's Fireworks may take, such as request a hearing or reconsideration," *id.* at 806; and (2) since that ruling, Jake's Fireworks has, in fact, made a request for a hearing that was denied by Director Kaye, such that there are no further steps that Jake's Fireworks can take to appeal or otherwise challenge the determinations made in the Notices.

This argument misreads *Jake's Fireworks I* and the statutory scheme underlying the CPSC's enforcement of the FHSA. Judge Grimm's observation that Jake's Fireworks still needed to request a hearing in relation to one of the Notices identified a necessary, but not sufficient, condition to consummate the agency's decision. Those steps arguably would exhaust available procedures within OCFO; they do not demonstrate that CPSC has taken a final agency action.

14

*Darby v. Cisneros*, 509 U.S. 137, 144 (1993) (stating that "the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality").

While the Notices state that the OCFO staff's position is that the Aerial Shell Fireworks are banned hazardous substances under the FHSA, they do not actually order Jake's Fireworks to take any action. Rather, each Notice takes the same approach: it requests destruction of the fireworks and mandates the procedures for destruction should Jake's Fireworks choose to take that action, and it warns of the possibility of legal action if Jake's Fireworks sells banned hazardous substances to the public. For example, in the September 18, 2018 Notice, an OCFO Compliance Officer stated that OCFO "requests that the distribution of the [fireworks] not take place and that the existing inventory be destroyed," then informed Jake's Fireworks that if it "chose to destroy the goods," it must take certain steps to confirm compliance with local requirements for safe destruction. 9/18/18 Notice at 2, Compl. Ex. C, ECF No. 1-3. Likewise, in the December 20, 2018 Notice, the OCFO Compliance Officer "request[ed] that the distribution of the sampled lots … not take place and that the existing inventory be destroyed." 12/20/18 Notice at 2, Compl. Ex. K, ECF No. 1-11. Though the Notices and the Handbook procedures allow the product owner to submit additional information and to request an informal hearing with the OCFO staff, *see, e.g.* 9/18/18 Notice at 3; Handbook at 18, Compl. Ex. B, ECF No. 1-2, the completion of any such processes does not end the agency's activities. At this point, all that has occurred is that the OCFO staff has requested voluntary compliance. *See Holistic Candlers Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 942, 944 (D.C. Cir. 2012) (holding that Food and Drug Administration "Warning Letters" sent to manufacturers and distributors of ear candles which stated that the agency considered the candles to be "adulterated and misbranded medical devices" did not constitute final agency action because they provided an opportunity for voluntary corrective action

before any enforcement action was taken and stated only that the failure to correct deviations "may" result in enforcement action and that the parties "should" take action to correct deviations). As discussed above, if the subject of the Notice "continues to disagree with CPSC staff and declines to take corrective action, the staff may request the Commission approve appropriate legal proceedings, including the issuance of an administrative complaint, injunctive action, seizure action, or such other action as may be appropriate." Handbook at 18-19; *Jake's Fireworks I*, 498 F. Supp. 3d at 803.

To pursue an administrative enforcement action, the OCFO staff would have to secure approval from the Commission itself, which could commence and impose an administrative enforcement action only after notice and an opportunity to be heard.  15 U.S.C. § 1274(e).  To pursue either civil penalties or criminal prosecution in federal court, the OCFO staff would have to make a recommendation to the Commission, which would consult with OGC to make a determination of whether to refer the matter to DOJ, and any such referral would occur only with notice and an opportunity to be heard provided to the product owner. *Jake's Fireworks I*, 498 F. Supp. 3d at 803; 15 U.S.C. §§ 1264(a), 1266, 2076; 16 C.F.R. § 1000.14.  Thus, OCFO, even if it has completed its assessment of whether the Aerial Shell Fireworks constitute banned hazardous substances, does not have the final word within the CPSC on that issue.

The facts that the Notices only request voluntary compliance, and that under the applicable statutory and regulatory regime, the Commission itself or OGC must act before any enforcement action may proceed, demonstrate that no final agency action has occurred.  In *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*, 324 F.3d 726 (D.C. Cir. 2003), a manufacturer of automatic sprinkler heads challenged the CPSC's preliminary determination, expressed in a letter to the manufacturer requesting voluntary corrective action, that the sprinkler

16

heads presented a "substantial product hazard" in violation of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2064(a). *Reliable Automatic Sprinkler*, 324 F.3d at 730. After the company filed suit seeking a declaratory judgment that its product did not violate the CPSA, the court upheld the dismissal of the case based on the lack of a final agency action because "[t]he agency ha[d] not yet made any determination or issued any order imposing any obligation" on the company, and "the agency ha[d] not yet taken the steps required under the statutory and regulatory scheme for its actions to have any legal consequences." *Id.* at 732. In particular, CPSC had not initiated any administrative enforcement proceedings against the company, and if it filed such a complaint, the company would then have the right to a hearing before the Commission before any sanction would be imposed. *Id.* at 733.

Similarly, in *Soundboard Association v. Federal Trade Commission*, 888 F.3d 1261 (D.C. Cir. 2018), the court held that a letter issued by the staff of the Federal Trade Commission ("FTC") that followed "extensive investigative efforts" and included "some definitive language" was not a final agency action for purposes of subject matter jurisdiction. *Id.* at 1267. The court rejected the argument that the letter constituted "the consummation of agency decisionmaking for 'all intents and purposes'" in part because under the particular statutory and regulatory scheme at issue, if the FTC staff sought to bring an enforcement action, the Commission itself would have to decide whether the staff's interpretation was correct and vote on whether to issue a complaint. *Id.* at 1269 (noting that "the manner in which the agency's governing statutes and regulations structure its decisionmaking processes is a touchstone of the finality analysis").

Here, the CPSC, through OCFO, has to date only requested voluntary corrective action. In order to make a determination imposing any obligation on Jake's Fireworks, such as civil penalties, the OCFO staff would have to refer the matter to the Commission itself or OGC for additional

action. As noted in Director Kaye's December 15, 2020 letter, OCFO staff has taken no action to date to do so. Where there is "only the possibility" that a party will "hav[e] to defend itself at an enforcement hearing" if it "does not undertake certain voluntary action," there is no final agency action. *Reliable Sprinkler*, 324 F.3d at 735; *see Holistic Candlers*, 664 F.3d at 945 (finding no final agency action in part because the Food and Drug Administration could "only ban devices after going through a formal process that it has not undertaken here").

Jake's Fireworks' arguments to the contrary do not alter this conclusion. Although Jake's Fireworks asserts, based on *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016), that a decision to initiate an enforcement action is not required to establish final agency action, the discussion of this issue in *Hawkes* focused on the second *Bennett* prong of "direct and appreciable legal consequences." *Hawkes*, 578 U.S. at 598 (citing *Bennett*, 520 U.S. at 178). It was undisputed that the action at issue, the issuance of a "jurisdictional determination" by the U.S. Army Corps of Engineers was, pursuant to a regulation, the consummation of the agency's decision. *Hawkes*, 578 U.S. at 597. Similarly, *Sackett v. Environmental Protection Agency*, 566 U.S. 120 (2012), relied upon by Jake's Fireworks, is distinguishable because the order deemed to be a final agency action actually ordered, rather than requested, compliance, and the court found that the findings and conclusions in the compliance order were not subject to any further review within the Environmental Protection Agency. *Id.* at 127. In contrast, here, as in *Reliable Sprinkler* and *Soundboard Association*, the CPSC operates under an independent commission structure where the statutory and regulatory regime contemplates review and a determination by either the Commission itself or OGC before any binding order can be entered. In cases in which notices seek voluntary compliance and the steps required to impose a mandatory order upon the subject

have not yet occurred, no final agency action has occurred. *See Reliable Sprinkler*, 324 F.3d at 733; *Soundboard Ass'n*, 888 F.3d. at 1267.

Jake's Fireworks also argues that because it "faces the choice of either complying with CPSC's dictates by not selling the products deemed banned or risking severe sanctions for knowing violations of the FHSA if it does not sell its products," the agency action has been consummated. Opp'n at 22. This precise argument was rejected in *Reliable Sprinklers*, in which the court found no final agency action even though the CPSC's letter seeking voluntary compliance imposed the "dilemma" and "practical consequence[]" of the product owner having to choose "between voluntary compliance with the agency's request for corrective action and the prospect of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement." *Reliable Sprinkler*, 324 F.3d at 732. Notably, the fact that only some of Jake's Fireworks's Aerial Shell Fireworks have been marked as banned hazardous substances, but 66 percent of those sampled have not, makes future CPSC enforcement action far from certain. Furthermore, Jake's Fireworks's reliance on *Doe v. Tenenbaum*, 127 F. Supp. 3d 426 (D. Md. 2012), is misplaced because the final agency action at issue was the publication of a report pursuing to the Consumer Product Safety Improvement Act, an entirely different scenario from that presented here. *Id.* at 465.

Finally, Jake's Fireworks argues that the Notices effectively impose legal consequences upon it because in other cases, including *United States v. Shelton Wholesale, Inc.*, No. 96-6131-CV-SJ, 1998 WL 251273 (W.D. Mo. Apr. 28, 1998), such Notices have been used as evidence of a "knowing" violation of the FHSA, as needed to establish civil penalties should the CPSC choose to pursue them. *See* 15 U.S.C. §§ 1264(a), (c)(1). In *Shelton Wholesale*, however, the court found only that a factfinder could consider the knowledge that fireworks had failed CPSC compliance

testing as evidence of a knowing violation of the FHSA, not that it definitively established such state of mind. *Shelton Wholesale*, 1998 WL 251273, at *11. Even if the potential for the Notice to impact the determination of whether a civil penalty may be imposed could be deemed to constitute a legal consequence, that conclusion would relate to the second prong of *Bennett*, the requirement that the action be one from which "legal consequences will flow." *Bennett*, 520 U.S. at 178. It would not demonstrate that the first prong, the consummation of the agency's decisionmaking, had been established.

Because both *Bennett* prongs must be satisfied to establish a final agency action, and the Court finds that the first prong has not been satisfied, the Court concludes that there has been no final agency action. The Motion to Dismiss will therefore be granted.

## CONCLUSION

For the foregoing reasons, the CPSC's Motion to Dismiss will be GRANTED, and the Complaint will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date:   April 21, 2023

THEODORE D. CHUANG
United States District Judge